Miles D. Grant, Esq.        (SBN 89766)
Alexander J. Kessler, Esq.  (SBN 278240)
**GRANT & KESSLER, APC**
1331 India Street
San Diego, CA 92101
Tel: 619-233-7078; Fax: 619-233-7036

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAINAL ALIREZA and ELHAM ALSULAIMAN,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID BREN; THE BUNKER MASTER HOLDINGS LLC; THE BUNKER LA LLC; THE BUNKER LA 2 LLC; and Does 1 to 50, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR RECOVERY OF DAMAGES UNDER RICO (18 U.S.C. § 1961, ET SEQ.), FRAUD, DECLARATORY RELIEF TO ESTABLISH ALTER EGO LIABILITY, AND ANTICIPATORY BREACH OF PROMISSORY NOTE** |

Plaintiffs allege:

## PRELIMINARY ALLEGATIONS

**A. Jurisdiction and Venue**

1. Federal District Court Jurisdiction exists in this action pursuant to 28 U.S.C. § 1331 because this is an action arising under a federal statue, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

2. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332(a)(2), because Plaintiffs are citizens of Dubai, United Arab Emirates and Defendants are each

1 | citizens of Delaware or California, thus creating diversity of citizenship. Plaintiff's damages, exclusive of interest and costs, is in excess of $75,000.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391 in that this is the judicial district in which all of the Defendants reside or have their principal place of business.

**B. The Parties**

4. Plaintiff ZAINAL ALIREZA is an individual who resides in Dubai, United Arab Emirates.

5. Plaintiff ELHAM ALSULAIMAN is an individual who resides in in Dubai, United Arab Emirates.

6. Plaintiffs believe and allege that Defendant DAVID BREN ("Bren") is an individual who resides in Los Angeles County.

7. Plaintiffs believe and allege that Defendant THE BUNKER MASTER HOLDINGS LLC ("Bunker Master") is a Delaware limited liability company, authorized to conduct business in California, with its principal place of business in Los Angeles County.

8. Plaintiffs believe and allege that Defendant THE BUNKER LA LLC ("Bunker LA1") is a California limited liability company, with its principal place of business in Los Angeles County.

9. Plaintiffs believe and allege that Defendant THE BUNKER LA 2 LLC ("Bunker LA2") is a California limited liability company, with its principal place of business in Los Angeles County.

10. Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1-50 and sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names when the same are ascertained.

/ / /

/ / /

/ / /

### C. The Fraudulent Scheme

11. For years, Bren has held out himself and "The Bunker" as a legitimate business operation that is in the process of building an ultra-high end automotive social club called "The Bunker." Bren and The Bunker regularly posted pictures on Instagram and other social media platforms about the business. Bren has produced and published videos, given interviews, and generally promoted the business online as if it was a legitimate enterprise. Plaintiffs believe and allege that all of this has been a charade designed to lure investors like Plaintiffs to provide money that Bren has used to fund his own extravagant lifestyle.

12. Instead of using the funds contributed by people like Plaintiffs for legitimate business expenses, Bren directly or indirectly used the funds to finance his extravagant lifestyle. Among other things, Bren used the funds to procure for himself one or more vehicles from Aston Martin. He used the funds to sign an agreement with Ferrari under which Bunker Master was to pay Ferrari $15 million over 5 years, and under which Bren is believed to have received significant personal benefits. Bren hosted extravagant events, including at the Formula 1 races in Miami, Abu Dhabi, and Monaco. Bren rented private yachts in Abu Dhabi and St. Barts. Bren flew himself and his friends around the world on private jets—including an MD-80 and a Bombardier Challenger 601—paid for by funds contributed by Plaintiffs and others fraud victims,

### D. Bren induces Plaintiff to contribute money

13. In late 2021, Bren approached Plaintiffs about investing in "The Bunker." To induce Plaintiffs to contribute money to The Bunker business, Bren made the following representations (collectively the "Subject Representations"):

(a) Bren had actually raised at least $5 million from investors, with at least another $15 million committed by a principal investor out of Saudi Arabia;

(b) Bren and The Bunker had raised another $25,000,000 by signing up 100 "Founding Members" who had already paid the first annual $250,000 membership fee, which was being held in escrow, and that this money would

become available when the business opened. Bren represented that numerous high profile individuals and families were Founding Members of the club, including August Busch (Anheuser-Busch family), August Getty (Getty Oil family), Blake Mycowski (Founder of Tom's), Cameron and Tyler Winklevoss, Christian Benz (Mercedes-Benz family), Dez Bryant (former NFL player), Eric Schmidt (former CEO of Google), Jean-Baptiste Maillard (CEO of Chopard), JJ Lin (pop star), Jose Guggenheim (Guggenheim family), Karlheinz Muhr (executive vice chairman of Global Corporate & Investment Banking at Bank of America Merrill Lynch) Kristaps Porzingis (NBA Player), Lance Stroll (F1 driver), Larry Ellison (Founder of Oracle), Lawrence Stroll (owner of Aston Martin), Mark Cuban, Travis Kalenek (founder of Uber), and more.

(c) Bren had purchased land in Beverly Hills where he would build The Bunker's planned clubhouse, restaurant, and hotel.

(d) Because this $40 million ($15 million from the Saudi investor and $25 million from the Founding Members) would not immediately be accessible, Bren needed to raise additional working capital to launch the business. Bren represented that any money Plaintiffs contributed would be used solely to help launch The Bunker's business.

(e) To further induce Plaintiffs to contribute money, Bren represented to them that he would partner with them to bring The Bunker concept to Dubai. On approximately March 3, 2022, Bren, on behalf of Bunker Master, executed a binding Term Sheet, a copy of which is attached as **Exhibit 1**, under which Bunker Master agreed to contribute $7,500,000 to the Dubai joint venture between Bunker Master and Plaintiffs. Bren represented that this $7,500,000 would come from his Saudi backers.

14. Based on Bren's false representations, Bren convinced Plaintiffs and others to invest and/or loan money to Bunker Master, which was primarily owned and

controlled by Bren. Based on the Subject Representations, and concurrent with executing the Term Sheet, Plaintiffs loaned Bunker Master $1,000,000, evidenced by the Convertible Promissory Note attached as **Exhibit 2**.

15. Defendants have continued to perpetuate the fraudulent scheme by continuing to make false representations to Plaintiffs, including that the Subject Representations were true and that they are still attempting build the business.

**E. Predicate Acts Establishing RICO Claims**

16. All of the above actions involve interstate commerce, as Bren conducted the fraudulent scheme (a) over phone, email, and text, (b) using entities formed and operating in Delaware and California, and (c) received money from Plaintiffs via wire or ACH from Dubai and wrote checks to Plaintiffs designed to be cashed in Dubai. These actions constitute wire fraud.

17. These facts also constitute a pattern of racketeering activity because, as explained in more detail below, Bren and Bunker Master did these acts repeatedly, with Plaintiff and others.

**F. Bunker Master breaches the Term Sheet by failing to contribute any money to the Dubai joint venture, then bounces a $500,000 check to Plaintiffs**

18. The Term Sheet required Bunker Master to contribute $7,500,000 to the Dubai joint venture immediately after the joint venture bank account was established, which occurred shortly after the Term Sheet was signed. To date, Bunker Master has failed to contribute any money to the joint venture.

19. In November 2022, Plaintiffs met with Bren in Los Angeles to discuss Bunker Master's failure to build The Bunker in Los Angeles and its breach of the Term Sheet by failing to contribute any money to the Dubai joint venture. Bren was extremely apologetic, promised to make good, and immediately wrote Plaintiffs a $500,000 check as a payment towards the amount owed under the Term Sheet. When Plaintiffs attempted to cash the check in the United States, it bounced. Defendants have never contributed any of the amount required under the Term Sheet.

### G. The Bunker does not exist and Defendants are being sued by numerous other creditors

20. Despite making promises for years that The Bunker had acquired property and vehicles and was about to open for business, The Bunker does not exist. There is no ultra-high end automotive club. There are no members. The business is a mirage.

21. Numerous other creditors have recently sued Defendants.

22. For example, on December 29, 2020, Fertitta Capital Inc. filed a complaint against Bren, Bunker LA1 and Bunker LA 2 in Los Angeles Superior Court, Case No. 20STCV49585, alleging that Bunker LA 2 agreed to sublease an office space at 9220 Sunset Boulevard, Suite 210, West Hollywood, CA ("Sunset Address") for $25k per month and agreed to pay a $218,000 security deposit. David made repeated promises to deliver the security deposit and rent payments but the payments never came through and one of the checks bounced. According to filings in the case, on July 14, 2021, the parties settled, with Defendants agreeing to pay a discounted amount of roughly $462,000. Defendant failed to pay under the settlement. For the next several months, Fertitta's attorneys communicated with Bren dozens of times about payment. As he did before the lawsuit was filed, Bren made repeated promises to pay and always found an excuse why payment was not made. David blamed the bank, government, and anyone else that he could. Fertitta later entered a Stipulated Judgment against Bunker LA2 and Bren for over $663,000.

23. On February 23, 2023, Porsche Leasing filed a lawsuit against Bren and Bren Capital in Los Angeles Superior Court, Case No. 23SMCV00845. The complaint alleges that Bren and Bren Capital defaulted on a lease agreement for a 2022 Porsche Cayenne that required monthly payments of $1,815.

24. On April 19, 2023, IKP, LLC filed a lawsuit against Bren, Bunker Master, Bunker LA2, and others, in Los Angeles Superior Court, Case No. 23SMCV01684. The complaint alleges that Defendants hired IKP to secure a suite for the Defendants at the Miami Grand Prix Formula 1 race. After the suite was obtained, Defendant failed to pay

$120,000 that was owed to IKP. Again, Bren allegedly made repeated promises to pay, none of which were kept, and offered numerous excuses for why payment was not made. The parties settled with Defendant signing a Stipulated Judgement and Settlement Agreement for $130,000. Defendants failed to make the initial $10,000 payment.  On September 1, 2023, IKP entered a judgment against Defendants for $116,910.

25.   On August 15, 2023, JKCA Properties, LLC filed a lawsuit against Bren in Los Angeles Superior Court, Case No. 23SMCV03773. The complaint alleges that Bren broke into a property at 630 N. Alta Drive, Beverly Hills, 90210 ("Alta Address"), replaced the locks, and refused to leave.  Bren failed to answer the complaint and his default was entered.

## FIRST CAUSE OF ACTION

### [Fraud, against Bren and Bunker Master]

26.   Plaintiff re-alleges and incorporates by this reference paragraphs 1-24.

27.   Bren and Bunker Master made the Subject Representations to Plaintiffs to induce Plaintiffs to contribute money.  They continued to make false representations to Plaintiffs, reaffirming the Subject Representations and continuing the fraud in an attempt to induce Plaintiffs not to take action to recover the amounts they are owed. Plaintiffs believe and allege that when Bren and Bunker Master made these representations, they knew them to be false and that the Subject Representations were made with the intent to defraud and deceive Plaintiffs, with the intent to induce Plaintiffs to loan $1,000,000 under the terms of the Note, and then to induce Plaintiffs not to take action to recover the amounts they were owed.

28.   Plaintiffs, at the time the Subjects Representations were made, and at the time Plaintiffs took the actions herein alleged, was ignorant of the falsity of the Subject Representations and believed them to be true.  In reliance on the Subjects Representations, Plaintiffs loaned Bunker Master $1,000,000 under the terms of the

1. Note. Had Plaintiffs known the true facts, they would not have made the loan to Bunker Master.

29. Plaintiffs' reliance on the Subject Representations were justified based on the representations made by Defendants.

30. As a result of the fraudulent misrepresentations by Bren and Bunker Master, Plaintiffs have been generally damaged in the sum of $1,000,000 together with interest at the legal rate of 10% per annum from March 3, 2022.

31. In doing the acts herein alleged, Bren and Bunker Master acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive damages in a sum subject to proof at trial.

## SECOND CAUSE OF ACTION

## [RICO Liability Against All Defendants]

32. Plaintiff re-alleges and incorporates by this reference paragraphs 1-24.

33. Defendants, and each of them, in doing the things alleged above have engaged in an enterprise affecting interstate commerce through a pattern of racketeering activity, including mail fraud and wire fraud, consisting of a series of wires and other transactions, done over the course of more than three years, all done for the purpose of defrauding Plaintiffs and others out of money. This activity has affected interstate commerce because the fraudulent scheme was designed by a California resident, Bren, to perpetrate a fraud against Plaintiffs, Dubai residents, utilizing Delaware and California entities, and utilizing the interstate banking system. Plaintiffs believe that each of the Defendants have conspired to engage in the pattern of racketeering activity to enable Bren to take money from Plaintiffs and others.

34. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages, three times the amount owed under the Note, together with her legal fees herein incurred.

/ / /

/ / /

## THIRD CAUSE OF ACTION
### [Anticipatory Breach of Promissory Note]

35. Plaintiff re-alleges and incorporates by this reference paragraphs 1-24.

36. On or about March 3, 2022, for valuable consideration, Bunker Master made, executed, and delivered to Plaintiffs the Note in the principal sum of $1,000,000.

37. While the Note states that it matures on March 1, 2024, and that no payments are due before that date, based on the facts set forth above—including Bunker Master bouncing a $500,000 check to Plaintiffs and failing to contribute any of the money required under the Term Sheet, Bunker Master has clearly demonstrated that it cannot and will not perform its obligations under the Note. As a result, Plaintiffs are entitled to treat the Note as if it was in default and immediately recover the amount owed.

38. No payments have ever been made on the Note. Interest is due and owing on the Note from March 3, 2022, at the rate of 8% per annum, in the amount of $219.18 per day, for a total of $133,261.44. Interest accrues on the Note after November 1, 2023 in the daily sum of $219.18.

39. As of November 1, 2021, the total due on the Note, principal and interest, is $1,133,261.44 plus interest after November 1, 2023 in the daily sum of $219.18

40. Pursuant to the terms of the Note, Plaintiff is entitled to reasonable attorneys' fees herein incurred.

## FOURTH CAUSE OF ACTION
### [Declaratory Relief – Alter Ego Liability)

41. Plaintiff re-alleges and incorporates by this reference paragraphs 1-24.

42. Plaintiffs believe and allege that at all times herein mentioned there existed a unity of interest and ownership between Bren, Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5, such that any individuality and separateness between them had ceased and Bren, Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 are the alter egos of one another, and are therefore jointly and severally liable for all sums

1  owed Plaintiff, including those sums owed under the Note (identified below) from
2  Bunker Master.

3      43.    Adherence to the fiction of the separate existence of Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 as entities distinct from Bren and one another would permit an abuse of the corporate privilege and promote injustice because, Plaintiffs believe and allege: (a) Bren dominated and controlled Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5; (b) Bren co-mingled funds with Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5, and Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 commingled funds with one another; (c) Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 were and always remained undercapitalized and lacked the ability to pay their debts; (d) at the time of incurring the obligations described below, Bunker Master had insufficient capital or revenues to meet its obligations to Plaintiff; (e) Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 pay the personal expenses of Bren and distributes funds to Bren rather than paying its creditors; and (f) Bren has dominated and controlled Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 to such an extent that he treats Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 and their assets the same as if directly owned by Bren

    44.    As their alter ego, Bren is jointly and severally liable with Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 for all sums owed to Plaintiff.  Additionally, Bunker LA1, Bunker LA2, and DOES 1-5 are liable with Bunker Master for all sums owed to Plaintiff.

    45.    An actual controversy has arisen and now exists between Plaintiff and Bren, Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 concerning liability to Plaintiff for the money Bunker Master owes Plaintiffs.  Plaintiffs contend Bren, Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 are the alter egos of one another, and that Bren, Bunker LA1, Bunker LA2, and DOES 1-5 are liable to Plaintiff for all money which Bunker Master owes Plaintiffs.

46. Plaintiffs desire a judicial determination of their rights and a declaration that Bren, Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 are the alter egos of one another or are otherwise liable for the obligations of Bunker Master to Plaintiff and are jointly liable with Bunker Master for all money owed Plaintiff as described above.

47. A judicial declaration is necessary and appropriate at this time so Plaintiffs may ascertain their rights against Bren, Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 in trying to collect the money owed to Plaintiff by Bunker Master.

**WHEREFORE**, Plaintiff prays for judgment as follows:

A. For damages in the principal sum of $1,000,000, together with interest at 8% per year from March 3, 2022;

B. In the Second Cause of Action, that the total damages be trebled;

C. For punitive damages in an amount to be determined at trial;

D. For a determination that Bren, Bunker Master, Bunker LA1, Bunker LA2, and DOES 1-5 are the alter egos of one another, and are therefore jointly and severally liable with one another for the full amounts owed to Plaintiff.

Dated:  January 23, 2024                    GRANT & KESSLER, APC

*/s/ Alexander J. Kessler*
Alexander J. Kessler, Esq.
Attorneys for Plaintiffs

X:\Data\01-428\A-Master\Pleadings\Complaint-01e.doc